UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.                                        Criminal No. 4:13cr25

STEVEN LAVONNE MORRIS,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Steven Lavonne
Morris's ("Defendant") motion for compassionate release pursuant
to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 562.  Defendant's motion
seeks a substantial sentence reduction based on his assertion that,
if he were sentenced today, he would no longer qualify as a "career
offender" under the federal Sentencing Guidelines.  The Government
filed a brief in opposition to Defendant's motion, ECF No. 568,
and Defendant filed a reply, ECF No. 569.  For the reasons stated
below, Defendant's compassionate release motion is **GRANTED, in
part,** with the Court reducing Defendant's sentence by a lesser
amount than requested in his motion.

### A. Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A), this Court has the
authority to reduce a term of imprisonment when a federal inmate
files a motion seeking "compassionate release" <u>after</u> exhausting
administrative remedies through the Bureau of Prisons ("BOP").  18

U.S.C. § 3582(c)(1)(A). Here, as supported by exhibits, ECF No. 562-1, Defendant asserts that he completed the necessary administrative steps before filing in this Court and the Government does not challenge his motion on procedural grounds. The Court therefore considers Defendant's motion on the merits.

### B. Standard of Review

As part of its broad changes to federal criminal sentencing, the First Step Act of 2018 amended the statute governing compassionate release motions, 18 U.S.C. § 3582(c)(1)(A), to give defendants the ability to file motions for sentence modifications "on their own behalf," United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). A district court may order the release of a defendant, or reduce a defendant's sentence to a lesser extent, if it finds that "extraordinary and compelling circumstances warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). To determine what constitutes an "extraordinary and compelling circumstance," a district court ordinarily must consider the "applicable policy statements issued by the United States Sentencing Commission." Id.; see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022). However, because the Fourth Circuit has held that there is not currently an applicable policy statement governing inmate-initiated compassionate release motions, district courts in this circuit must "make their own independent determinations of what constitutes an extraordinary and compelling reason" for relief.

McCoy, 981 F.3d at 284 (internal quotation marks omitted); see Hargrove, 30 F.4th 194 (explaining that the Guideline policy statement governing BOP-initiated motions, set forth in U.S.S.G. § 1B1.13, "remains helpful guidance" in determining whether the "extraordinary and compelling" threshold has been met).

Notwithstanding the Court's broad authority to determine which circumstances satisfy the extraordinary and compelling threshold, a compassionate release motion is not an opportunity to challenge the validity of an inmate's long-final sentence. Rather, a proper request for a reduced sentence under § 3582(c)(1)(A) has a "fundamentally different character" than a collateral attack on a sentence as a § 3582(c)(1)(A) motion generally seeks leniency due to legal and factual developments occurring after sentencing, whereas a § 2255 collateral attack typically challenges the constitutionality of a conviction or sentence or argues that "the district court erred" when imposing the original sentence. United States v. Bridgewater, 995 F.3d 591, 595 (7th Cir. 2021) (internal quotation marks omitted); see also McCoy, 981 F.3d at 288 (explaining that the recent changes to the compassionate release statute "gives new discretion to the courts to consider leniency").

### C. Discussion

#### 1. Background and Claim for Relief

Defendant was convicted of a drug trafficking conspiracy involving large quantities of cocaine and cocaine base, and he

faced a statutory punishment of 10 years to life imprisonment. ECF No. 429; 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A). At the time he was sentenced, Defendant qualified as a "career offender" under the advisory Guidelines based on a prior drug conviction that qualified as a "controlled substance offense" and a prior attempted abduction conviction that qualified as a "crime of violence." U.S.S.G. § 4B1.1. Defendant's Guideline offense level based on his drug quantity and leadership role in the drug conspiracy (level 37) exceeded the offense level based on the career offender Guideline (level 34).[1] Although the career offender designation did not increase Defendant's offense level calculation, it had the effect of increasing his Guideline Criminal History Category from a Category III to a Category VI, which resulted in his advisory Guideline range increasing from 262-327 months to 360-life. At sentencing, this Court varied downward from the 360 month recommended minimum sentence, imposing a term of 294 months imprisonment. The Court's stated justification for the significant downward variance was unrelated to Defendant's status as a career offender. ECF No. 428, at 85-86.

Defendant's compassionate release motion relies primarily on the fact that an amendment to the Guidelines adopted by the Sentencing Commission after Defendant was sentenced would result

---

[1] Both of the offense levels set forth herein reflect a 3-level credit for acceptance of responsibility.

in a substantial reduction to the recommended sentence if he were sentenced today.  Specifically, in 2016, the "residual clause" of the Guideline definition of "crime of violence" was deleted, and without that clause, Defendant's prior Virginia attempted abduction conviction would not qualify as a predicate "crime of violence" under the career offender Guideline.[2]  Defendant argues that the resulting dramatic reduction in the sentence recommended by the Guidelines, coupled with his good behavior while incarcerated and efforts toward rehabilitation, constitute an "extraordinary and compelling" basis for compassionate release.

The Government opposes Defendant's motion on various grounds in its detailed brief.  ECF No. 568.  The Court, however, disagrees with the Government's suggestion that Defendant's arguments are akin to an improper successive § 2255 motion, or that Defendant is improperly attempting to make an "end run" around the "ordinary limitations of post-conviction relief" by challenging the propriety of his original sentence.  Id. at 1-2.  As accurately

---

[2] As highlighted by Defendant, the Fourth Circuit has held that kidnapping under Virginia law (which is synonymous with "abduction" under Virginia law) does not qualify as a crime of violence under the "force clause" of a similarly worded statutory definition of "crime of violence" because it can be committed "in a non-violent manner through deceptive means."  United States v. Mathis, 932 F.3d 242, 267 (4th Cir. 2019).  Additionally, the Government does not assert that abduction under Virginia law falls within the enumerated crime of "kidnapping" as listed in Guideline § 4B1.2(a)(2).  Cf. United States v. Morris, 917 F.3d 818, 824 (4th Cir. 2019) (discussing appellate case law addressing the fact that Virginia abduction is broader than "generic" kidnapping).  On the contrary, the Government's opposition brief discusses at length why Defendant's attempted abduction conviction was, at the time of sentencing, properly deemed a "crime of violence" under the residual clause of Guideline § 4B1.2(a)(2).  See ECF No. 568, at 10-18.

noted in his reply brief, Defendant's compassionate release motion does not assert that his original sentence was unconstitutional, that it was based on a misapplication of the Guidelines, or that it was otherwise improper. ECF No. 569, at 1-2. Rather, he relies on factual and legal developments occurring <u>subsequent to sentencing</u> and asks this Court to reduce his sentence based on those developments. This request is wholly consistent with the Fourth Circuit's recent acknowledgment that, absent a controlling policy statement governing inmate-initiated compassionate release motions, the amended compassionate release statute provides district courts with broad authority "to consider leniency" when other avenues of sentencing relief are not available. <u>See</u> <u>McCoy</u>, 981 F.3d at 286-88 (explaining that the relief under the compassionate release statute is "open-ended" and intended "to capture the truly exceptional cases that fall within no other statutory category," to include situations where Congress chose not to make a reduced punishment "categorically retroactive" and those where a defendant does not fall within a "precisely delineated class of cases").

## 2. Sentence Disparity

Defendant's motion correctly argues that the sentence disparity at issue in this case is driven by two different post-sentencing amendments to the Guidelines. As noted above, the deletion of the career offender residual clause is the primary

6

Guideline change supporting Defendant's claim for relief. The second relevant Guideline change is commonly referred to as the "drugs minus two" amendment, which was effective November 1, 2014, and resulted in a significant reduction to the recommended sentence for federal drug offenders. U.S.S.G. Supp. to App. C, Amend. 782. As its name suggests, the "drugs minus two" amendment had the effect of reducing Guideline drug-weight "base offense levels" by two levels, and its impact was greatest for offenders, like Defendant, whose Guideline ranges fall on the bottom portion of the Guideline Sentencing Table. Were Defendant sentenced today, he would not only have a lower criminal history category (because he would not qualify as a career offender), but he would also not face any impediment to receiving the full benefit of the drugs minus two amendment.[3] Application of the amendment in this case would reduce Defendant's drug-based offense level from a level 37 to a level 35, which when paired with a Criminal History Category of III, would result in an advisory Guideline range of 210-262 months imprisonment. Accordingly, the difference between the minimum sentence recommended under the current Guidelines and the

---

[3] Defendant's compassionate release motion indicates that he has not pursued a sentence reduction under the retroactive drugs minus two Guideline amendment due to his career offender status. ECF No. 562, at 3. Though it appears that Defendant is not precluded from filing a drugs minus two motion to reduce his Guideline range to 292-365 months, he would receive virtually no benefit from doing so with his career offender status still in place, because U.S.S.G. § 1B1.10(b)(2)(A) would preclude the Court from reducing Defendant's sentence to a term less than 292 months.

minimum sentence recommended by the Guidelines in effect at the time of sentencing is more than 12 years. Viewed another way, the minimum sentence recommended by the Guidelines at sentencing was 70% higher than the minimum sentence that the Guidelines would recommend if Defendant committed the same drug trafficking offense today.

Considering the above calculations, it is clear to the Court that Defendant is serving a sentence many years longer than he would receive if he were sentenced today. In other words, the Court finds that there is a substantial sentencing disparity resulting from little more than the date on which Defendant was sentenced.[4] The operative question for the Court is whether that fact, coupled with the rest of the case-specific record, constitute an "extraordinary and compelling" basis for compassionate release. For the reasons explained below, the Court finds that it does.

### 3. Extraordinary and Compelling Basis for Relief

First, addressing the reason why Defendant would not qualify as a career offender under current law, Defendant's Virginia attempted abduction conviction previously qualified as a career offender predicate "crime of violence" under the "residual clause"

---

[4] For the purposes of compassionate release, which is a discretionary remedy grounded in leniency, the Court finds that the most telling comparison for determining the "disparity" experienced by Defendant is a comparison of the Guideline range applied at sentencing to the range that would be applied today if the exact crime were committed by a person with the exact same criminal history.

in U.S.S.G. § 4B1.2(a)(2). In 2016, the Sentencing Commission elected to eliminate the residual clause from the Guideline definition of "crime of violence," indicating that it was eliminating it following "the Commission's multi-year study of statutory and guideline definitions relating to the nature of a defendant's prior conviction." U.S.S.G. Supp. to App. C, Amend. 798. This study considered the definition of "crime of violence" and its impact on various Guideline provisions recommending increased sentences, "the most significant of which is §4B1.1 (Career Offender)." Id. The Commission went on to explain that the deleted residual clause was identical to a statutory residual clause that the Supreme Court had invalidated as "unconstitutionally vague" in Johnson v. United States, 576 U.S. 591 (2015). Id. Though the Commission acknowledged that the Supreme Court's Johnson opinion did not expressly address the constitutionality of the residual clause found in the Guidelines, it nevertheless "determined that the residual clause at § 4B1.2 implicates many of the same concerns cited by the Supreme Court in Johnson, and, as a matter of policy," the Commission elected to "strike the clause." Id. (emphasis added).[5] The above commentary

---

[5] In March of 2017, the Supreme Court held that the advisory Guidelines are "not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is [therefore] not void for vagueness." Beckles v. United States, 137 S. Ct. 886, 895 (2017). Despite that ruling, in the years that followed, the Commission did not readopt a "residual clause" in the Guideline definition of "crime of violence."

thus reveals a carefully calculated decision to limit the reach of the Guideline definition of "crime of violence" so that it does not drastically increase the recommended punishment based on a facially vague standard. That the Commission did not choose to designate Guideline Amendment 798 as "categorically retroactive" does not preclude this Court from considering its impact on a case-by-case basis. McCoy, 981 F.3d at 286-87.

Second, the Court compares Defendant's request for relief—a claim grounded in the deletion of the Guideline residual clause—to compassionate release requests relying on statutory changes to firearms offenses (as addressed in McCoy), and compassionate release requests relying on a changed interpretation of the career offender provision's applicability to federal drug conspiracies (as addressed in United States v. Norman, 935 F.3d 232 (4th Cir. 2019)).[6] Compassionate release motions in the mold of McCoy argue that the "gross disparity" between a sentence imposed under an earlier version of 18 U.S.C. § 924(c), a federal firearm statute, and "the sentence[] Congress now believes to be an appropriate penalty" for the same crime, is a compelling basis for compassionate release. McCoy, 981 F.3d at 285. Compassionate release motions predicated on Norman argue that a career offender

---

[6] In Norman, the Fourth Circuit held that a federal drug trafficking conspiracy conviction under 21 U.S.C. § 846 "is a categorical mismatch to the generic crime of conspiracy enumerated in § 4B1.2(b)," meaning that a § 846 federal drug conspiracy conviction is not a predicate crime for the purpose of the career offender calculation.

designation that was appropriate at the time of sentencing but would not apply under the Fourth Circuit's current interpretation of the Guideline definition of "conspiracy" is a valid basis for compassionate release. See, e.g., United States v. Trice, No. 7:13cr34, 2021 WL 402462, at *1, *3-4 (W.D. Va. Feb. 3, 2021). The undersigned judge has granted multiple compassionate release motions predicated on McCoy, see, e.g., United States v. Guess, No. 2:10cr140, 2021 WL 6049455, at *4-6 (E.D. Va. Dec. 21, 2021), and one motion predicated on Norman, recognizing that while the sentencing disparity in the case based on Norman was "technical" in nature, the "glaring disparity between [the] [d]efendant's original Guideline range and the Guideline range he would be assigned today" still weighed in support of granting relief, United States v. Hailey, No. 4:11cr13 (E.D. Va. Oct. 8, 2021), ECF No. 78, at 16;[7] cf. United States v. Thomas, No. 21-7518, 2022 WL 1011933, at *1 (4th Cir. Apr. 5, 2022) (explaining that the defendant's Norman-based compassionate release claim was not frivolous and vacating the district court's denial of the compassionate release motion and remanding for consideration of the Norman claim).

---

[7] As explained in Hailey, the defendant's "designation as a career offender resulted in a Guideline range five times greater than the range [he] would have been assigned were he sentenced for the same offense today, roughly equating to a ten-year difference between the low ends of the respective Guideline ranges . . . ." Hailey, ECF No. 78, at 16.

Here, Defendant's sentencing disparity claim is not as compelling as most claims in the mold of McCoy because McCoy-based claims typically involve defendants subject to statutory mandatory minimums that increased their sentences by several decades, and here, Defendant was sentenced under an advisory Guideline regime that called for a sentence twelve and a half years longer than would be recommended today. Defendant's claim is, however, stronger than a typical Norman-based compassionate release claim because Norman involved the Fourth Circuit's re-evaluation of the breadth of an unchanged Guideline provision, whereas Defendant's claim is predicated on the Sentencing Commission's calculated decision to narrow the Guideline definition of "crime of violence," a change made "as a matter of policy" with an aim at eliminating an admittedly vague legal standard.[8] See United States v. Redd, 444 F. Supp. 3d 717, 722–23 (E.D. Va. 2020) ("In assessing whether Mr. Redd has presented extraordinary and compelling reasons, the Court has initially and centrally considered the sentence he received relative to the sentence he would now receive for the same offense, whether and to what extent there is a disparity

---

[8] Though not addressed in the briefs, and not as compelling as the residual clause argument for the reasons explained above, it appears that Defendant could have alternatively sought compassionate release pursuant to Norman because his offense of conviction is a drug trafficking conspiracy that, under Norman, does not qualify as a "controlled substance offense." See U.S.S.G. § 4B1.1(a) (indicating that the career offender designation can only apply if the "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense").

between the two sentences, and why that disparity exists."
(emphasis added)). Accordingly, similar to the Fourth Circuit's
statement in McCoy, this Court finds that Defendant has effectively
demonstrated that he is currently serving a sentence substantially
longer "than what . . . [the Sentencing Commission] has now deemed
an adequate punishment" for a defendant who committed the same
crime with the same criminal history. McCoy, 981 F.3d at 285
(citation omitted).

Third, in determining whether there is an "extraordinary and
compelling" basis for sentencing relief, the Court considers the
Defendant's behavior while incarcerated, to include his lack of
BOP infractions and his efforts toward rehabilitation. The
following factors weigh strongly in Defendant's favor: (1)
Defendant has been incarcerated for nearly a decade and he offers
BOP records stating that he has had zero incident reports since
his term of incarceration began; (2) the BOP has determined that
Defendant's recidivism risk level is "low" and that his security
classification score is "low," determinations that are based on a
combination of Defendant's conduct prior to incarceration and
his conduct while incarcerated, ECF No. 562-1, at 1;
(3) notwithstanding his sentence of nearly 25 years for a serious
drug trafficking crime, Defendant is currently housed at a low
security BOP facility, id.; and (4) Defendant has completed a BOP
drug education course, multiple job training courses, as well as

two phases of a lengthy self-improvement course during which he received an award for "outstanding growth, exceptional character and courage," ECF No. 562-1, at 8-14; see Hargrove, 30 F.4th at 197 (explaining that the extraordinary and compelling calculus requires a "multifaceted" inquiry and quoting from the BOP's internal guidance for compassionate release motions, which references the "nature and circumstances of the inmate's offense[,] . . . institutional adjustment[,] and disciplinary infractions" (cleaned up) (quoting U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), 4-5 (Jan. 17, 2019)).

Additionally, although Defendant was not a first or second time offender like the defendants in McCoy, Defendant's federal drug crime was not a violent offense, he was not charged with possessing a gun in conjunction with his drug conspiracy, and he was not attributed with a gun at sentencing under the Guidelines— a relatively rare occurrence in cases involving large quantities of illicit drugs and drug proceeds. The absence of violence or a firearm in a large scale drug conspiracy favorably distinguishes Defendant's offenses from the multiple violent robberies at issue in McCoy and both favors leniency and reduces the likelihood that Defendant will be a danger to the public, particularly when considered in conjunction with Defendant's age.

14

In short, on this case-specific record, the substantial disparity between the Guideline range that would be applicable if Defendant were sentenced today and the range applied at his original sentencing, Defendant's decade-long period of good behavior while incarcerated, and the non-violent nature of Defendant's drug conspiracy, when taken together, constitute an "extraordinary and compelling" reason for a reduced sentence.

### 4. § 3553(a) Factors

Consistent with the Court's decision to vary downward at Defendant's original sentencing based on the mitigating considerations before the Court at that time, the § 3553(a) factors continue to be largely favorable to Defendant and support relief under the compassionate release statute.[9]  First, as discussed above, Defendant was convicted of a non-violent drug conspiracy that did not involve a firearm, and neither his attempted abduction crime nor his federal drug conspiracy satisfy the Guideline "career offender" requirements under current law.  Second, after spending close to a decade in federal custody, Defendant has zero documented infractions; has completed drug treatment, a two phase

---

[9] Although it is not discussed in Defendant's pending motion, at sentencing, the Court considered Defendant's strong relationship with his family as a positive sentencing factor because such a relationship encourages accountability and reflects positively on the outlook for rehabilitation. The BOP records submitted by Defendant indicate that, notwithstanding modified BOP operations during the COVID-19 pandemic, Defendant "has maintained contact with his family members" and has "maintained clear conduct throughout the lock down."  ECF No. 562-1, at 3.

self-improvement course, and job training; and has worked while incarcerated.[10] Defendant also has a "low" recidivism risk score, a "low" security classification score, and is currently housed in a low security federal prison notwithstanding the serious nature of his federal crime and the fact that his scheduled release date is not until 2034.

Counterbalancing these mitigating factors, Defendant was the leader of a large drug trafficking conspiracy, and he played a key role in directing the activities of other co-conspirators over a lengthy period of time. See ECF No. 568, at 3-8. The quantity of cocaine and cocaine base Defendant helped distribute over a significant period of time negatively impacted countless members of the community, and Defendant was mature enough and experienced enough with illicit drugs to recognize the tangible harm he was causing. See id. at 9 (recounting the Court's sentencing comments). Though the Court varied downward substantially at the initial sentencing hearing in spite of these aggravating factors, the degree of the variance was predicated on the thirty-year minimum sentence recommended by the Guidelines, the sentences received by co-defendants, and the fact that Defendant was still receiving a sentence of almost twenty-five years for a non-violent

---

[10] Defendant is encouraged to continue his rehabilitation through completing additional BOP educational, vocational, and self-improvement courses during the remainder of his term of imprisonment as doing so will help him achieve his stated goals of improving the community, getting as much education as possible, and leading a law-abiding life. ECF No. 428, at 69-72.

crime. Based on the sentencing regime at the time of sentencing, the term of nearly twenty-five years was deemed necessary to reflect the seriousness of his offense and to satisfy the other § 3553(a) considerations.

Having reviewed Defendant's PSR and the relevant portions of the original sentencing transcript, as well as the factual and legal developments relied on by Defendant in support of his compassionate release motion, the Court finds that the § 3553(a) factors support a discretionary sentence reduction **from 294 months to 192 months**. The Court has fully considered Defendant's request for a sentence between 144 and 168 months (a sentence significantly below the low-end of the Guideline range that would apply if Defendant were sentenced today), but finds that, on this record, a sentence below 192 months would not adequately reflect the seriousness of Defendant's long running and large scale crime or the extent of Defendant's criminal history, would not promote respect for the law, and would not adequately account for Defendant's aggravated role leading this offense. Though Defendant would not be a career offender if he were sentenced today, his criminal record, which includes a prior drug conviction for which he served multiple years in prison, provided tangible motivation for Defendant to rehabilitate at an earlier stage in his life, and his decision to take on a leadership role in this offense and engage in significant drug trafficking (both in time

17

and quantity) militates against a greater reduction than that applied here today. Stated another way, when fashioning the reduced sentence of 192 months, the Court has factored in all the reasons it previously varied below 360 months, as well as all of the factual and legal developments since sentencing, finding that a sentence of 192 months is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a).

### D. Conclusion

For the reasons outlined above, the Court **GRANTS** Defendant's compassionate release motion, in part, and **REDUCES** his sentence of imprisonment to a term of **192 months**. All other provisions of the judgment dated November 14, 2013, ECF No. 408, shall remain in effect.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Defendant, to counsel of record for the Government, and to the United States Bureau of Prisons.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 29 , 2022